UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| KEVIN LOYNACHAN and JANICE LOYNACHAN, individually and as successors-in-interest to Decedent CHAD LOYNACHAN,<br><br>Plaintiffs,<br><br>v.<br><br>DARLENE SMILEY, in her individual capacity as a law enforcement officer for SISKIYOU COUNTY SHERIFF'S OFFICE; and DOES 1-50, inclusive,<br><br>Defendant. | No. 2:22-cv-00841 WBS JDP<br><br>ORDER |

----oo0oo----

Plaintiffs Kevin and Janice Loynachan bring claims under the Fourth and Fourteenth Amendments, both individually and as successors-in-interest of their deceased son Chad Loynachan, against defendant Darlene Smiley. Defendant moves for summary judgment on all claims. (Mot. (Docket No. 39).)

///

1

I.  Factual Background

Defendant Darlene Smiley is, and was at all relevant times, a transport officer with the Siskiyou County Jail. Her responsibilities included transporting inmates to and from places such as hospitals and courts. (Smiley Deposition (Docket No. 39-4) at 5.)

On February 5, 2021, Chad Loynachan was stopped for speeding and then arrested for possession of a stolen firearm and drugs for distribution. (Internal Investigation I[1] (Docket No. 39-6) at 6-8.) Loynachan was taken to the Siskiyou County Jail as a pretrial detainee the same day. (Id. at 10.)

Shortly before noon on February 19, Loynachan approached a custodial officer and said that he swallowed a razor. (Id. at 11.) Arrangements were promptly made to have Loynachan medically evaluated at the Fairchild Medical Center. (Id.) Prior to transport and according to protocol, Loynachan was placed in belly chains, leg shackles, and handcuffs tethered to the belly chains. (Smiley Deposition at 12-13.) The leg shackles were around 14 inches in length; Loynachan's handcuffed hands could reach out approximately a foot from the belly chains. (Id. at 13-14.) Loynachan was searched for weapons, also according to protocol. None were found. (Id. at 15.)

Defendant, as the on-duty transport officer, transported Loynachan in a Ford Expedition SUV to the Fairchild Medical Center. (Internal Investigation II (Docket No. 40-1) at

---

[1] The parties submitted different excerpted portions from the same Siskiyou County Sheriff Department's Internal Investigation of Loynachan's death.

2

1  3.) Defendant was equipped with a duty belt, which contained her
2  duty gun secured to her right hip in a holster with a safety
3  release. (Smiley Deposition at 30, 43.) Defendant also had a
4  taser holstered to her left thigh. (Id. at 50.) No other
5  transport officers accompanied Loynachan. (Id.) Defendant drove
6  Loynachan to the hospital and parked the car outside the hospital
7  entrance. (Smiley Deposition at 10.) Hospital security camera
8  footage shows Loynachan and defendant walking into the hospital
9  around five minutes before noon. (Docket No. 39-7 at 2.)
10         Loynachan and defendant left the hospital about an hour
11 later. (Id. at 3.) They walked around the Expedition to the
12 driver's side, with Loynachan in front. (Smiley Deposition at
13 19.) Loynachan stopped and stood by the rear tire on the
14 driver's side while defendant entered a code on the driver's door
15 to unlock it. (Id.) Defendant then opened the driver's door,
16 unlocked the rest of the car, shut the driver's door, and opened
17 the passenger door on the driver's side. (Id.)
18         A struggle ensued. (Id. at 23-51.) Defendant alleges
19 that Loynachan, after initially entering the vehicle, lunged at
20 her and grabbed her duty belt, repeatedly headbutted and bit her
21 fingers and ear, and attempted to reach for her holstered taser.
22 (Id.) The struggle ended with defendant firing a single shot
23 into Loynachan's right mid abdomen. (Autopsy Report (Docket No.
24 40-9) at 2.) Based on autopsy reports, the shot was fired less
25 than an inch away from Loynachan's abdomen. (Olson Deposition
26 (Docket No. 39-5) at 11.) The bullet traveled right to left,
27 downwards, and front to back, eventually lodging in the left side
28 of Loynachan's lower back bone. (Id. at 12-15.) Loynachan fell

3

1  and lay supine and unresponsive with his head near the
2  Expedition's rear left tire and his feet near the front left
3  tire.  (Docket No. 39-12 at 5.)  Loynachan was taken to an
4  emergency operating room; however, he suffered "devastating"
5  damage from the bullet wound and was pronounced dead after over
6  two hours of surgery.  (Nelson Decl. (Docket No. 39-8) ¶¶ 2-4.)
7          Loynachan's body showed fresh abrasions on his scalp,
8  nose, and lips, and a laceration of his eyelid.  (Olson
9  Deposition at 15-17.)  There are no records indicating that
10 Loynachan entered the hospital for his earlier evaluation with
11 any of these injuries.  (See generally Docket No. 39-11.)
12         An officer who arrived on the scene shortly after the
13 gunshot reported that defendant was "very obviously upset and was
14 crying," and had blood on her hands and forehead.  (Docket No.
15 40-8 at 5.)  Defendant received a medical evaluation within an
16 hour of the shooting, which documented fresh human bite marks and
17 broken skin on her left hand fingers and her right ear, and a
18 "goose egg" lump on the back of her head.  (See generally Docket
19 No. 39-9.)
20 II.  Legal Standard
21         Summary judgment is proper "if the movant shows that
22 there is no genuine dispute as to any material fact and the
23 movant is entitled to judgment as a matter of law."  Fed. R. Civ.
24 P. 56(a).  A material fact is one that could affect the outcome
25 of the suit, and a genuine issue is one that could permit a
26 reasonable trier of fact to enter a verdict in the non-moving
27 party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242,
28 248 (1986).

4

1           The movant bears the initial burden of demonstrating
2  the absence of a genuine issue of material fact as to the basis
3  for the motion.  Celotex Corp. v. Catrett, 477 U.S. 317, 323
4  (1986).  The moving party can satisfy its burden by presenting
5  evidence that negates an essential element of the nonmoving
6  party's case.  Celotex Corp, 477 U.S. at 322-23.  Alternatively,
7  the movant can demonstrate that the non-moving party cannot
8  provide evidence to support an essential element upon which it
9  will bear the burden of proof at trial.  Id.  The burden then
10 shifts to the non-moving party to set forth specific facts to
11 show that there is a genuine issue for trial.  See id. at 324.
12 Any inferences drawn from the underlying facts must, however, be
13 viewed in the light most favorable to the non-moving party.  See
14 Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,
15 587 (1986).
16 III. Discussion
17         Plaintiffs bring three Section 1983 claims against
18 defendant: Fourth Amendment excessive force (Claim 1); Fourth
19 Amendment failure to provide reasonable post-arrest care (Claim
20 2); and Fourteenth Amendment familial loss (Claim 3).  (See
21 generally First Am. Compl. ("FAC") (Docket No. 33).)
22      A.   Excessive Force (Claim 1)
23         Defendant asserts qualified immunity against
24 plaintiffs' excessive force claim.  Qualified immunity is a
25 question of law to be decided by the court.  See Hunter v.
26 Bryant, 502 U.S. 224, 228 (2009) ("Immunity ordinarily should be
27 decided by the court long before trial.").  A defendant is
28 entitled to qualified immunity if a plaintiff (1) has not

5

"alleged" or "shown" facts that would make out a constitutional violation, or (2) fails to show that an alleged constitutional violation was not "'clearly established' at the time of defendant's alleged misconduct." A.D. v. Cal. Highway Patrol, 712 F.3d 446, 453-54 (9th Cir. 2013) (citing Pearson v. Callahan, 555 U.S. 223, 232, 236 (2009)).  On a motion for summary judgment, the court first determines "whether the evidence viewed in the light most favorable to the plaintiff is sufficient to show a violation of a constitutional right." Sandoval v. County of San Diego, 985 F.3d 657, 671 (9th Cir. 2021) (cleaned up).

### 1. Constitutional Violation

"[A]pprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment." Tennessee v. Garner, 471 U.S. 1, 7 (1985).  The Supreme Court in Graham v. Connor set forth a non-exhaustive list of factors for evaluating an officer's reasonability: (1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect actively resisted arrest or attempted to escape. See George v. Morris, 736 F.3d 829, 837 (9th Cir. 2013) (citing Graham, 490 U.S. 386 (1989)).  And in Tennessee v. Garner, the Supreme Court analyzed the application of deadly force by weighing (1) the immediacy of the threat, (2) whether force was necessary to safeguard officers or the public, and (3) whether officers administered a warning, assuming it was practicable.  See George, 736 F.3d 829, 837 (citing Garner, 471 U.S. at 11-12).

"In cases where the best (and usually only) witness who

1 could offer direct testimony for the plaintiff about what
2 happened before a shooting has died, our precedent permits the
3 decedent's version of events to be constructed circumstantially
4 from competent expert and physical evidence, as well as from
5 inconsistencies in the testimony of law enforcement." George,
6 736 F.3d at 834 (9th Cir. 2013).

7    It is undisputed that some kind of violent altercation
8 ensued between Loynachan and defendant -- their respective wounds
9 beyond Loynachan's gunshot wound attest to that.  However, the
10 present record leaves some room, however slight, for a genuine
11 dispute as to whether Loynachan, in the moments before the fatal
12 shot, ceased his attack on defendant and was turning to flee.
13 Roger Clark, plaintiffs' expert witness, opines that "it is
14 likely that Loynachan was turning away or turned away in some
15 manner of escape when Deputy Smiley shot him" based on the
16 trajectory of the bullet.  (Clark Report[2] (Docket No. 40-10) at
17 7-8.)  Clark also states that the position of Loynachan's body
18 right after the shot was "in a position more consistent with
19 Loynachan trying to escape . . . ."  (Id. at 8.)

20    Clark's report also leaves room for genuine dispute on

---

[2]   Defendant objects to the expert reports of Roger Clark (Docket No. 40-10) and Leonard J. Romero (Docket No. 40-6): Clark's, on hearsay grounds because Clark "is not a medical doctor and [] cannot and has not, analyzed the path of the bullet he uses to claim the decedent was 'trying to flee' at the moment he was wounded;" and Romero's, because it was not made under penalty of perjury.  (Reply at 3.)  These are no grounds to ignore the reports.  "At the summary judgment stage, we do not focus on the admissibility of the evidence's form.  We instead focus on the admissibility of its contents."  Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003); see Fed. R. Civ. P. 56(c)(2).

7

whether lethal force was truly necessary to safeguard defendant's safety.  Defendant testified that she, at some point, was able to create some space between herself and Loynachan during the altercation.  (Smiley Deposition at 31 ("I am trying to push away from him, and at one point I do know -- remember either pushing or hitting the side of his head.  I get away enough and am now to my right side, and he is biting my ear." ).)  From this Clark concludes that defendant could have, and should have, "simply stepped away, created distance and used a less lethal force option."  (Clark Report (Docket No. 40-10) at 7.)  There are also genuine disputes of material fact on whether lethal force was proportionate to the danger that Loynachan posed, or to the severity of defendant's injuries, at least because no testimony from Loynachan is available to counter defendant's testimony on the precise nature and severity of Loynachan's assault or whether he was in fact attempting to reach defendant's taser to disarm her immediately before the shot.

"Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict.  The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S. H. Kress & Co., 398 U.S. 144, 158-59 (1970)).  Accordingly, in light of the issues raised by Clark's report and the absence of countervailing testimony from Loynachan, for purposes of ruling on this motion the court is compelled to accept the inferences

opined in Clark's report and conclude therefrom that defendant violated Loynachan's constitutional right to be free from unreasonable seizure by fatally shooting him.

### 2. Clearly Established Right

Still, qualified immunity applies if the violated constitutional right was not clearly established. "A right is clearly established when it is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" Rivas-Villegas v. Cortesluna, 595 U.S. 1, 5-6 (2021) (quoting Mullenix v. Luna, 577 U.S. 7, 11 (2015)). When determining whether a right is clearly established, the court may not "define clearly established law at a high level of generality." Kisela v. Hughes, 138 S. Ct. 1148, 1152 (2018) (quoting Ashcroft v. Al-Kidd, 563 U.S. 731, 742 (2011)). Rather, "[t]his inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" Rivas-Villegas, 595 U.S. at 5-6 (citation omitted); see White v. Pauly, 580 U.S. 73, 79 (2017) ("[T]he clearly established law at issue must be particularized to the facts of the case.").

Tailoring the court's inquiry closely to the specific contours of the present record, the court defines the relevant question thusly: Would a reasonable officer understand that it was unlawful to use lethal force against a detainee when the detainee is no longer resisting, but is instead in the process of fleeing from the officer?

The balance of precedent suggests that the answer is yes. See, e.g., Graham v. Connor, 490 U.S. 386, 394 (1989) ("[T]he use of deadly force to apprehend a fleeing suspect who

did not appear to be armed or otherwise dangerous violated the suspect's constitutional rights, notwithstanding the existence of probable cause to arrest.") (citing Tennessee v. Garner, 471 U.S. 1, 5 (1985)); Foster v. City of Indio, 908 F.3d 1204, 1211 (9th Cir. 2018) ("It is clearly established law that shooting a fleeing suspect in the back violates the suspect's Fourth Amendment rights."); Harris v. Roderick, 126 F.3d 1189, 1203 (9th Cir. 1997) ("Graham's totality of the circumstances test does not permit the use of deadly force to kill a suspect who is running back to a cabin where he is temporarily staying . . . ."); Tan Lam v. City of Los Banos, 976 F.3d 986, 1002-03 (9th Cir. 2020) ("The law was also clearly established at the time of the incident that firing a second shot at a person who had previously been aggressive, but posed no threat to the officer at the time of the second shot, would violate the victim's rights."); Curnow By and Through Curnow v. Ridgecrest Police, 952 F.2d 321, 324-25 (9th Cir. 1991) (shooting suspect in the back who was armed with a rifle but not facing the officer or pointing the rifle at the officer at the time of the shot, was unreasonable and a violation of a clearly established right).

    Defendant cites no countervailing cases, either in their motion or in reply, that suggest a different definition of the clearly defined right, or a different conclusion under the court's definition.

    Permitting the inference, without so finding, that Loynachan ceased his assault and was turning to flee in the moments before defendant shot him, the case law establishes that defendant had "fair warning" that using deadly force would

violate Loynachan's Fourth Amendment right.  See Hope v. Pelzer, 536 U.S. 730, 741 (2002)

Accordingly, because defendant's entitlement to qualified immunity ultimately turns on disputed issues of fact, summary judgment is not presently appropriate for this claim. See Liston v. Cty. of Riverside, 120 F.3d 965, 975 (9th Cir. 1997) ("While we have held that qualified immunity is to be determined at the earliest possible point in the litigation, we have also held that summary judgment in favor of moving defendants is inappropriate where a genuine issue of material fact prevents a determination of qualified immunity until after trial on the merits.").

B. Failure to Provide Reasonable Post-Arrest Care and Familial Loss Claims (Claims 2-3)

In their opposition, plaintiffs state that they "do not oppose dismissal of their failure to provide medical care claim or 14th Amendment familial loss claim." (Opp'n at 17 n.2.) Plaintiffs also did not assert any arguments opposing summary judgment on those claims.  Accordingly, the court will grant defendant's summary judgment motion as to Claims 2 and 3.

IT IS THEREFORE ORDERED that defendant's motion for summary judgment (Docket No. 39) be, and the same hereby is, DENIED as to Claim 1, and GRANTED as to Claims 2 and 3.

Dated:  February 6, 2024

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

11